IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALFRED DIXON, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0064-N |
| | § | |
| STATE FARM MUTUAL AUTOMOBILE | § | |
| INSURANCE COS., *et al.*, | § | |
| | § | |
|    Defendants. | § | |

# ORDER

Before the Court is Plaintiff Dixon's motion to remand. Because the Court finds that Dixon did not improperly join Defendant Bird, the Court grants the motion to remand.

## I. BACKGROUND

According to Dixon's state court petition, Dixon was formerly an employee of Defendant State Farm Mutual Automobile Insurance Companies ("State Farm"). Defendant Bird's role is unclear, though it appears he may have been a supervisor of Dixon. Dixon alleges that "[w]hile working for Defendant State Farm, Plaintiff was discriminated against because of his race in that he was: a. not granted access to his supervisor, which hurt his potential job performance and promotion opportunities; b. unfairly singled out for criticism by Defendant Bird; and c. terminated by Defendants because he is an African-American." Plaintiff's Original Petition ¶ 6. Dixon further alleges:

> Defendants Bird and State Farm acted intentionally and/or recklessly by singling Plaintiff out for inappropriate disciplinary action. Defendants Bird and State Farm harassed Plaintiff and subjected Plaintiff to demeaning

>behavior while engaging in a campaign to destroy Plaintiff's reputation within the company by, among other things, attributing the misconduct of other employees to Plaintiff. Also Defendant Bird created an extremely stressful environment for Plaintiff by singling out Plaintiff for unwarranted criticism, and assigning Plaintiff excessive task [sic] and duties. This conduct by Defendants Bird and State Farm was extreme and outrageous and proximately caused the Plaintiff severe emotional distress.

*Id.* ¶ 11. These two paragraphs are the sole factual allegations in Dixon's pleading.

Dixon sued State Farm and Bird on November 28, 2005, in County Court at Law No. 1, in Dallas County, Texas. He asserted claims against both State Farm and Bird for racial discrimination under chapter 21 of the Texas Labor Code and for intentional infliction of emotional distress. State Farm and Bird timely removed to this Court on the basis of diversity, arguing that Dixon improperly joined Bird, who is a Texas resident and not diverse. Dixon has now moved the remand this action to state court.[1]

## II. DIXON STATES A VIABLE IIED CLAIM AGAINST BIRD

This case stands at the intersection of a plaintiff's traditional right to choose a forum and the judicial ambivalence about the tort of intentional infliction of emotional distress ("IIED"). *See, e.g.*, *Twyman v. Twyman*, 855 S.W.2d 619, 629-34 (Tex. 1993) (Hecht, J., concurring and dissenting). It appears that some plaintiffs would prefer to assert their employment claims in state court. In order to prevent removal of a claim against a diverse employer, those plaintiffs will join a claim against a nondiverse coworker or supervisor. The

---

[1] State Farm and Bird have also moved to dismiss all claims, except the discrimination claim against State Farm, under Rule 12(b)(6). Because those issues are the mirror image of the issues addressed here, the Court does not separately consider the motion to dismiss.

ORDER – PAGE 2

employer, having a reciprocal preference for a federal forum, will then remove to federal court, claiming improper joinder[2] of the nondiverse supervisor.

In assessing the claim of improper joinder, the Court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. To make that determination, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* (footnote omitted). In keeping with the plaintiff's right to choose a forum, "the motive or purpose of the joinder of in-state defendants is not relevant." *Id.* at 574.

The standard for dismissal under Rule 12(b)(6) is well known. The Court "must accept [plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46(1957)). *See also Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted."). Additionally, in analyzing improper joinder,

---

[2]In *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), *cert. denied*, 125 S. Ct. 1825 (2005), the Fifth Circuit replaced the traditional but misleading label of "fraudulent joinder" with "improper joinder."

ORDER – PAGE 3

the plaintiff also gets the benefit of the doubt on close questions of substantive law. *See McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004) ("Any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor.") (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003));

### A. Hoffman-LaRoche *Does Not Eliminate IIED Claims Against Supervisors*

Defendants rely on *Swafford v. Bank of America Corp.*, 401 F. Supp. 2d 761 (S.D. Tex. 2005), for the proposition that an IIED claim does not lie against a supervisor for the same conduct supporting a statutory employment claim. *Swafford* in turn relied on *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) for the proposition that "[i]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Id.* at 448. *Swafford* combined that with the proposition that the section of the Texas Commission on Human Rights Act ("TCHRA") providing a cause of action against employers, *see* TEX. LABOR CODE § 21.051, does not create a statutory cause of action against supervisors or coworkers. *See, e.g.*, *Marabella v. Autonation U.S.A. Corp.*, 88 F. Supp. 2d 750, 752 (S.D. Tex. 2000) ("Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA."). *Swafford* then concluded:

> The gravamen of Swafford's claim is age discrimination, and she invokes the same evidence to show discrimination and a hostile work environment that she relies on to show intentional infliction of emotional distress. She cannot circumvent the legislative prohibition against suing an individual supervisor by asserting a claim for intentional infliction of emotional distress.

401 F. Supp. 2d at 764. This Court must respectfully disagree with *Swafford*.

The general rule is that a "corporate officer or agent is always primarily liable for his own torts, even though the principal is also vicariously liable." *Cass v. Stephens*, 156 S.W.3d 38, 62 (Tex. App. – El Paso 2004, pet. filed) (citing *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex. Civ. App. – El Paso 1972, no writ) and *Portlock v. Perry*, 852 S.W.2d 578, 582 (Tex. App. – Dallas 1993, writ denied)). The contentious issue usually is whether the employer is also liable for the employee's tortious acts. *See, e.g.*, *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 608, 617-18 (Tex. 1999) (employer vicariously liable for supervisor's IIED). It is against this background that the Court must consider the impact of *Hoffman-La Roche* on an IIED claim against a supervisor.[3]

*Hoffman-La Roche* relied on the Texas Supreme Court's earlier decision in *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), holding that IIED was a "gap-filler" tort designed to reach egregious circumstances that might otherwise go unremedied. 144 S.W.3d at 447. IIED "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Id.* (quoting *Standard Fruit*). The Court noted that the TCHRA has damage caps, *id.* at 446, and held that permitting an IIED claim in that case would wrongly "thwart legislative limitations on statutory claims for mental anguish and punitive damages." *Id.* at 447.

---

[3]Interestingly, in *Hoffman-La Roche*, plaintiff Zeltwanger also obtained judgment against her supervisor for IIED; the supervisor was not a party to the appeal. 144 S.W.3d at 442. It would be somewhat ironic if the holding of *Hoffman-La Roche* implies that judgment against her supervisor was invalid.

ORDER – PAGE 5

*Swafford* reads *Hoffman-La Roche* and section 21.051 of the Texas Labor Code too broadly. Section 21.051 provides that "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age *the employer*" takes listed prohibited actions. TEX. LABOR CODE § 21.051 (emphasis added). The TCHRA nowhere expressly exempts supervisors from its scope; rather, it extends a statutory remedy only against employers. *Swafford* incorrectly reads this negative "failure to reach" supervisors and coworkers as an affirmative legislative grant of immunity from common law torts. *See* 401 F. Supp. 2d at 764 (referring to "legislative prohibition against suing an individual supervisor"). It is only through this inversion that *Swafford* can construe section 21.051 as a "legislative limitation on statutory claims" against a supervisor that would be thwarted by permitting an IIED claim on the same facts supporting a TCHRA claim.

There are at least four problems with *Swafford*'s analysis. First, and most striking, it is not textual. There simply is no language in the TCHRA giving supervisors or coworkers immunity for common law torts, nor is there any language indicating the TCHRA was intended to displace all common law employment-related claims. Second, there is nothing about the logic of *Swafford*'s argument that limits the supposed legislative immunization to IIED. Under that logic a supervisor who physically assaulted a subordinate due to race or gender until the subordinate quit would be immune from a claim of common law assault. That surely is not what the TCHRA was intended to achieve. Third, *Swafford*'s reading of section 21.051 conflicts with the common law premise that a corporate employee or agent

is primarily liable for his or her own torts.  Finally, *Swafford*'s analysis results in a disfavored abrogation of a common law tort by implication from a statute.  *See Cash American Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000) ("Abrogating common-law claims 'is disfavored and requires a clear repugnance between the common law and statutory causes of action.'") (quoting *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex. App. – Fort Worth 1995, writ denied)); *Coppedge v. Colonial Savings & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex. App. – Dallas 1986, writ ref'd n.r.e.) ("repeal of a common-law action and remedy by implication is disfavored").

     A better reading of section 21.051, and one consistent with *Hoffman-La Roche*, is that by extending a statutory remedy only against employers, the TCHRA leaves in place a "gap" with respect to supervisors and coworkers that can properly be filled by IIED.[4]  This reading of *Hoffman-La Roche* makes it immaterial whether "the gravamen of a plaintiff's complaint" against a coworker or supervisor "is the type of wrong that the statutory remedy was meant to cover."  144 S.W.3d at 448.  The statutory remedy displaced common law IIED claims against *an employer* for the type of wrong that the TCHRA was meant to cover.  Because the TCHRA does not cover claims against a coworker or supervisor, IIED claims against a coworker or supervisor have no such limitation.  There appears to be nothing in either section

---

[4] To the extent this is a close question, "any uncertainties in controlling substantive law must be resolved in favor of the plaintiff."  *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989).

ORDER – PAGE 7

21.051 or *Hoffman-La Roche* that would preclude a TCHRA claim against an employer and an IIED claim against a supervisor for the same conduct.[5]

### B. Dixon Sufficiently Alleges an IIED Claim Against Bird

The Court must now determine whether Dixon sufficiently alleges an IIED claim against Bird.

> To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.

*Hoffman-La Roche*, 144 S.W.3d at 445 (citing *Standard Fruit*, 965 S.W.2d at 65).

> Texas courts have held that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. The range of behavior encompassed in "employment disputes" is broad, and includes at a minimum such things as criticism, lack of recognition, and low evaluations, which, although unpleasant and sometimes unfair, are ordinarily expected in the work environment. Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.

*GTE Southwest*, 998 S.W.2d at 612-13 (citations omitted). *See also id.* at 617 ("We recognize that, even when an employer or supervisor abuses a position of power over an employee, the employer will not be liable for mere insults, indignities, or annoyances that are

---

[5] This is harmonious with the general principle of respondeat superior that "employers are generally jointly and severally liable *along with the tortfeasor employee* for the torts of employees committed within the scope of employment." DAN B. DOBBS, THE LAW OF TORTS § 333, at 905 (2001) (emphasis added, footnote omitted).

not extreme and outrageous.") (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. e (1965)).

As discussed above, Dixon complains of certain specified acts by Bird, and also makes a more generalized complaint. The specific allegations against Bird are that: (1) he unfairly singled Dixon out for criticism; (2) he terminated Dixon because he is an African-American; (3) he singled Dixon out for inappropriate disciplinary action; (4) he attributed the misconduct of other employees to Dixon; and (5) he assigned Dixon excessive tasks and duties. Whether these allegations are sufficiently extreme and outrageous to constitute IIED is, in the first instance, a question of law for the Court. *See GTE Southwest*, 998 S.W.2d at 616 (quoting *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)). The Court is confidant that allegations (1) and (3)-(5) fall comfortably within the range of "employment disputes" that are not extreme and outrageous under Texas law. The Court finds the second specific allegation – termination because of race – to be more difficult due to the lack of Texas precedent. In view of Dixon's general allegation, however, the Court is spared the need to make an *Erie* guess.

The general allegation is that Bird harassed Dixon and subjected Dixon to demeaning behavior while engaging in a campaign to destroy Dixon's reputation within the company. "When such repeated or ongoing harassment is alleged, the offensive conduct is evaluated as a whole." *GTE Southwest*, 998 S.W.2d at 615. In evaluating Bird's alleged conduct as a whole, the question is whether "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, *supra*, 467 U.S. at 73.

The Court acknowledges some tension between the liberal statements of notice pleading, *see, e.g.*, FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim"), and decisions discounting "conclusory allegations" in rule 12(b)(6) motions. *E.g.*, *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (pleader must allege specific facts, not conclusory allegations); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (conclusory allegations not taken as admitted true in rule 12(b)(6) motion). Some guidance on the line between a short and plain statement and a conclusory allegation can be found in the Forms accompanying the Federal Rules of Civil Procedure. *See, e.g.*, FED. R. CIV. P. Forms 4 (account), 5 (goods sold and delivered), 9 (negligence) 11 (conversion), and 12 (specific performance). Dixon's general allegation contains at least the factual specificity of those forms. Accordingly, the Court holds that Dixon's general allegation is a factual allegation that will "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47. It appears to the Court that Dixon could prove a set of facts consistent with that general allegation that would meet all the elements of IIED.[6] Accordingly, the Court holds the Dixon did not improperly join Bird.

## CONCLUSION

The Court's decision here does not reflect any preference by the Court for either a federal or state forum. Nor does it reflect affection or distaste for IIED. It does not reflect

---

[6]The Court is certainly not holding that such facts actually exist. It may well be that following discovery, Dixon's IIED claim is ripe for summary judgment, i.e., that the actual facts underlying the general allegation are insufficiently extreme and outrageous as a matter of law. That is not a question before the Court today.

any policy choices at all. Rather, it reflects this Court's diligent attempt to follow the Texas Supreme Court's articulation of Texas law on IIED, regardless of the forum consequences. Having said that, the Court is not blind to the potential for forum selection mischief its ruling might entail if a litigant were willing to plead recklessly without regard to the actual facts. That is a risk best addressed through sanctions under Rule 13 of the Texas Rules of Civil Procedure.

Because Dixon did not improperly join Bird, there is not complete diversity and this Court does not have subject matter jurisdiction. Accordingly, the Court grants Dixon's motion to remand, and orders that this action be remanded to the County Court at Law No. 1 of Dallas County, Texas.[7]

Signed June 5, 2006.

_David C. Godbey_
David C. Godbey
United States District Judge

---

[7] The Court finds that no award of costs or expenses, including attorneys' fees, is merited under 28 U.S.C. § 1447(c).

ORDER – PAGE 11